IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


| | | |
|---|---|---|
| IVY R. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 09-4070-JAR-GBC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |


## REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error as alleged by plaintiff in several aspects of the ALJ's decision, the court recommends the decision be REVERSED and judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

I.  **Background**

Plaintiff applied for DIB and SSI, respectively, on September 19, and December 29, 2005, alleging disability since

June 1, 2003. (R. 13, 51-55, 264-69). The applications were denied initially and upon reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). (R. 13, 25-26, 30-31, 37). Plaintiff's request was granted, and plaintiff appeared with counsel for a hearing before ALJ Edward C. Graham on May 29, 2008. (R. 13, 298). At the hearing testimony was taken from plaintiff, from plaintiff's case manager, and from a vocational expert. (R. 13, 298-321). Thereafter, the ALJ issued a decision finding that plaintiff is addicted to methamphetamine, and, when considering that impairment, plaintiff is disabled and unable to perform any jobs existing in significant numbers in the economy. (R. 16-17). He found that if plaintiff stopped all drug use, she would continue to have a combination of severe impairments, but she would be able to perform her past relevant work and other jobs existing in significant numbers in the economy. (R. 18-20). Therefore, he concluded that plaintiff's methamphetamine addiction is a contributing factor material to the determination of disability, and that she is not disabled within the meaning of the Act. (R. 20). Consequently, he denied plaintiff's applications. (R. 21).

Plaintiff sought Appeals Council review of the decision, and submitted a brief along with more recent treatment records. (R. 9, 278-97). The Appeals Council made the submissions a part of the record (R. 8), but found the "information does not provide a

basis for changing the Administrative Law Judge's decision" (R.
6), and denied review. (R. 5-7). Therefore, the ALJ's decision
is the final decision of the Commissioner. (R. 9); <u>Blea v.
Barnhart</u>, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now
seeks judicial review of the decision.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C.
§§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of
the Commissioner as to any fact, if supported by substantial
evidence, shall be conclusive."  The court must determine whether
the factual findings are supported by substantial evidence in the
record and whether the ALJ applied the correct legal standard.
<u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007); <u>White v.
Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial
evidence is more than a scintilla, but less than a preponderance,
it is such evidence as a reasonable mind might accept to support
a conclusion.  <u>Zoltanski v. F.A.A.</u>, 372 F.3d 1195, 1200 (10th
Cir. 2004); <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988).
The court may "neither reweigh the evidence nor substitute [it's]
judgment for that of the agency."  <u>White</u>, 287 F.3d at 905
(quoting <u>Casias v. Sec'y of Health & Human Serv.</u>, 933 F.2d 799,
800 (10th Cir. 1991)); <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172
(10th Cir. 2005).  The determination of whether substantial
evidence supports the Commissioner's decision, however, is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Where the Appeals Council accepts new evidence and makes it a part of the administrative record, the court interprets those facts "as an implicit determination [plaintiff] had submitted qualifying new evidence for consideration." Martinez v. Barnhart, 444 F.3d 1201, 1207 (10th Cir. 2006). Such evidence, made a part of the administrative record by the Appeals Council, will be considered by the court in its review of the Commissioner's decision. Id. at 1208(citing O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994)).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2008); Allen v. Barnhart, 357 F.3d 1140,

1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the Commissioner has the burden to show other jobs in the national economy within plaintiff's capacity.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

This case includes considerations of drug addiction and alcoholism and requires a particular framework for evaluation. In 1996, Congress passed Public Law 104-121 amending the Social Security Act to add § 223(d)(2)(C) (codified at 42 U.S.C. § 423(d)(2)(C). Thereunder, if a claimant is disabled and also suffers from alcoholism or drug addiction, the Commissioner must determine whether the alcoholism or drug addiction is a contributing factor material to the determination of disability. If it is, the claimant will be found not to be "disabled" as defined in the Act. Drapeau v. Massanari, 255 F.3d 1211, 1215 (10th Cir. 2001). The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the claim "is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol." Id.

Pursuant to 20 C.F.R. §§ 404.1535 and 416.935, a finding of disability is a condition precedent to the determination whether alcoholism or drug addiction is a contributing factor material to the disability determination. Id., 255 F.3d at 1214(construing the 1996 amendment and the regulations). Therefore, in a case such as this where drug addiction or alcoholism is suggested by the evidence, the ALJ must first apply the five-step sequential evaluation process to determine whether a plaintiff's condition, including consideration of drug addiction or alcoholism, is disabling. If so, the ALJ must then assess plaintiff's RFC

limitations which would remain if she stopped using drugs or
alcohol, and apply steps four and five a second time to determine
whether the limitations assessed would be disabling.  Id., 255
F.3d at 1214-15.

## III. Analysis

Plaintiff claims the ALJ erred in failing to acknowledge
attention deficit hyperactivity disorder (ADHD) as a "severe"
impairment and failed to consider the effects of this impairment
in making each of the RFC assessments in this case; improperly
evaluated the credibility of plaintiff's allegations of symptoms
resulting from her impairments; improperly evaluated the opinion
of plaintiff's treating physician, Dr. Rimando; and erred in
assessing plaintiff's RFC, both when considering methamphetamine
use, and when considering her RFC if she stopped all
methamphetamine use.  (Pl. Br. 16-30).  In her conclusion
plaintiff suggests the ALJ was biased; states, "It is apparent
that, with her past history of drug use, the plaintiff cannot
expect a fair hearing from this ALJ;" and asks the court to
direct the Commissioner on remand to assign this case to a
different ALJ.  (Pl. Br. 32).

The Commissioner argues that the ALJ properly considered the
combined effect of all of plaintiff's impairments, properly
considered Dr. Rimando's opinion, and made a proper credibility
finding.  (Comm'r Br. 5-11).  He argues that the ALJ also made a

proper RFC assessment, determining that plaintiff's
methamphetamine use alone would preclude employment. (Comm'r Br.
11-12). In his final argument, the Commissioner alleges
plaintiff did not properly raise the question of bias by the ALJ
(either before this court or in the administrative proceedings
below), that the court must begin with the presumption that
administrative adjudicators are unbiased, and that the ALJ's
actions below are the normal incidents of conducting
administrative proceedings. (Comm'r Br. 12-14). In her reply
brief, plaintiff reiterates her arguments, asserts that much of
the Commissioner's argument is merely <u>post hoc</u> rationalization of
the ALJ's decision, and responds to the Commissioner's arguments
regarding bias: "The plaintiff is not contending that this case
should be remanded on the grounds of bias. She does submit,
however, that this Court has the authority to direct or recommend
assignment of the case to a different ALJ on remand if it appears
that the claimant may not be able to get a fair and impartial
hearing before the original ALJ, and that this is such a case."
(Reply 5)(citing Circuit Court and District Court case law).

The crux of plaintiff's claims is that the ALJ committed
three primary factual errors in evaluating the evidence
((1) implying plaintiff used methamphetamine continuously,
stopping perhaps, but only briefly, during her pregnancy in 2006;
(2) stating plaintiff testified she had been sober for four

years; and (3) stating plaintiff had not had any mental health treatment whatever for almost one year before the hearing), mischaracterized much of the evidence, and failed to adequately explain or discuss his findings, resulting in the errors discussed above. The court agrees with the crux of plaintiff's argument, and finds remand is necessary because the ALJ's primary factual errors indicate the decision is not supported by substantial evidence in the record as a whole, and because the ALJ's failure to adequately explain his findings leaves the court unable to determine what evidence the ALJ relied upon in support of his individual findings. Therefore, the court would be required to reweigh the evidence to determine whether the individual findings are supported by substantial evidence in the record as a whole, an activity the court may not undertake.

### A.   Factual Errors

As plaintiff's brief suggests, the ALJ found that "claimant states that she has been sober for four years" (R. 16), that "claimant has not had any mental health treatment whatsoever for almost one full year" (R. 19), and that she "has not had any [psychiatric] treatment whatsoever for almost one year." (R. 19). The court's review is hampered by the ALJ's failure to cite to the record. The court found only one citation to the record in the decision. (R. 19)(citing Ex. 2-F)(R. 126-28)(Dr.

Rimando's[1] Medical Source Statement).  Nonetheless, the court's

review of the record reveals no support for these factual

findings by the ALJ.  Neither plaintiff's documentary submissions

nor plaintiff's hearing testimony allege that she had not used

methamphetamine in four years.  Rather, as the ALJ found, "In

2004, 2005, and early 2006, the claimant's treatment records are

replete with notations about the claimant's near-daily

methamphetamine abuse."  (R. 18).  As the ALJ found, on August

30, 2005 plaintiff told her doctor she uses methamphetamine

daily, and on February 20, 2006 she told her counselor she had

used methamphetamine the previous week.  (R. 16)(apparently

referring without citation to (R. 164, 208))[2].  In her "Drug and

---

[1] In his decision, the ALJ refers to Dr. Rimando as Dr.
Ricardo.  (R. 19).

[2] The court notes that ten separate documents consisting of
139 pages of medical records are singularly identified as Exhibit
1F.  (R. 2-3, 129-259).  The only medical record separately
identified is Dr. Rimando's Medical Source Statement, identified
as Exhibit 2F.  (R. 3, 126-28).  At the hearing, each of sections
A, B, D, and E of the exhibits was admitted into evidence and
identified as a single exhibit:  1A, 1B, 1D, and 1E; whereas the
medical records were admitted as exhibits 1F and 2F, and the SSI
exhibits were admitted as "many SSI exhibits."  (R. 300).  This
ambiguous state of affairs no doubt made it difficult for the ALJ
to cite to a particular medical record or to an individual page
from a record.  Nevertheless, a decision is to be written such
that the claimant and any reviewing court is able to determine
the basis for the decision and to determine whether substantial
evidence in the record supports the decision.  Love v. Astrue,
No. 2:07-cv-00593 BSJ, Slip op. 2009 WL 102838 *4 (D. Utah Jan.
14, 2009);  Kency v. Comm'r, Civ. A. No. 03-1190-MLB, 2004 WL
5542829 *4 (D. Kan. Nov. 16, 2004).  Missing, ambiguous, and
inadequate citation to the record make it more difficulty to
ascertain the basis for the decision, more difficult to follow

Alcohol Use Questionnaire" completed April 18, 2006, plaintiff reported she last used drugs on April 4, 2006. (R. 129-31). After that date there is no admission by plaintiff that she has used drugs, the treatment records do not indicate drug use, and Dr. Rimando reported on May 28, 2008 that plaintiff "has been drug free for over two years." (R. 127). The Commissioner tacitly admits plaintiff did not testify to four years of abstinence from drugs. (Comm'r Br. 9)(Plaintiff's testimony that she had not <u>worked</u> in three or four years "may have been what the ALJ remembered incorrectly."). The record is clear that plaintiff did not report four years of sobriety, contrary to the ALJ's finding. The ALJ made a factual error in stating plaintiff claimed to have been sober for four years. Moreover, although plaintiff did not testify to this fact, there is no record evidence that plaintiff used methamphetamine after April 4, 2006, a period of approximately two years at the time of the hearing in May 2008.

With regard to mental health treatment within the year (either before the hearing or before Dr. Rimando completed his Medical Source Statement), the Commissioner's response brief points to doctor visits on February 22, April 3, and June 5, 2007 and argues, "This information appears to be consistent [with] the

the ALJ's rationale, and more difficult to determine whether substantial evidence in the record supports the decision.

ALJ's assertion that, at the time of Dr. Rimando's May 28, 2008 assessment, Plaintiff had not sought treatment 'for almost one full year.'" (Comm'r Br. 6)(quoting(R. 19) and citing (R. 150-51)). As the Commissioner argues, the record before the ALJ provides some support for the ALJ's factual finding, because that portion of the record reveals no doctor visits with Dr. Rimando after June 5, 2007. However, the most recent mental health treatment records were not in the record before the ALJ. When plaintiff's counsel suggested this shortcoming to the ALJ at the hearing, the ALJ cut him off, stating, "I'll keep the record open." (R. 30). Two weeks later, the ALJ issued his decision--before receiving the most recent mental health records and apparently without checking on the status of those records. Thereafter, plaintiff submitted the records to the Appeals Council which admitted them into the record. (R. 8, 278-86). Those records demonstrate that Dr. Rimando also treated plaintiff on August 13 and November 19, 2007, and March 12, 2008. (R. 278-80). These records demonstrate conclusively that the ALJ made a factual error in finding that plaintiff had not sought or received mental health treatment for a year before the hearing or before Dr. Rimando prepared his Medical Source Statement.

These errors are significant, because the ALJ relied upon them in finding plaintiff's allegations were not credible, and in rejecting the opinion of Dr. Rimando.

> Because a credibility assessment requires consideration
> of all the factors "in combination," [] when several of
> the factors relied upon by the ALJ are found to be
> unsupported or contradicted by the record, [a court is]
> precluded from weighing the remaining factors to
> determine whether they, in themselves, are sufficient
> to support the credibility determination.

Bakalarski v. Apfel, No. 97-1107, 1997 WL 748653, *3 (10th Cir.

Dec. 3, 1997) (emphasis in original)(quoting Huston v. Bowen, 838

F.2d 1125, 1132 n.7 (10th Cir. 1988)(citation omitted)).

Therefore, remand is necessary for the Commissioner to perform a

proper credibility determination in light of the record evidence

and of this court's discussion.

The factual bases for the ALJ's evaluation of Dr. Rimando's

opinion is also undermined because of these factual errors, and

remand is necessary for the Commissioner to properly weigh Dr.

Rimando's opinion in light of a proper understanding of the

record.  The Commissioner is required to give Dr. Rimando's

treating source opinion proper deference, and must provide

specific, legitimate reasons to reject it.  Watkins v. Barnhart,

350 F.3d 1297, 1300-01 (10th Cir. 2003).

The record is not so clear regarding the third factual error

alleged by plaintiff--that the ALJ erroneously implied that

plaintiff used methamphetamine nearly continuously, stopping,

perhaps, only during the period in 2006 when she was pregnant.

Plaintiff argues that the ALJ found she suffered from

methamphetamine addiction during the entire period at issue, but

admits that the ALJ recognized there is no record evidence that plaintiff used methamphetamine during her pregnancy. (Pl. Br. 17). The Commissioner argues that the "ALJ appeared to accept Plaintiff's statement that she stopped drug use when she learned she was pregnant in 2006," and argues that "Defendant found no indication that the ALJ did not believe that Plaintiff's drug use stopped in early 2006." (Comm'r Br. 12). The court does not agree with the Commissioner's view of the ALJ's findings. The ALJ discussed the extent and timing of plaintiff's drug use:

> The claimant's mental health treatment notes are replete with mentions of the claimant's methamphetamine use and struggle to get "clean." The claimant states that she has been sober for four years, but a review of her treatment records indicates that this is not the case. (Testimony). She had two emergency room visits in 2005, during each of which she tested positive for methamphetamine. On August 30, 2005, she told her doctor that she started using methamphetamine at age 12 or 13 and uses daily. In February, 2006 she told her counselor that she had used meth the previous week.

(R. 16).

Later, the ALJ again discussed the extent of plaintiff's drug use:

> In 2004, 2005, and early 2006, the claimant's treatment records are replete with notations about the claimant's near-daily methamphetamine abuse. However, the claimant states that she stopped using when she learned that she was pregnant. She gave birth in November, 2006. There is no notation to indicate that the claimant did use during the pregnancy.
>
> Following the birth of her child, the claimant's treatment notes took a turn for the more functional.

(R. 18).

The quotation from page 16 of the record implies that plaintiff has had a continuing problem with methamphetamine use, has had an ongoing struggle to get "clean," and uses methamphetamine frequently. The quotation from page 18 acknowledges <u>plaintiff's testimony</u> that she stopped use when she became pregnant, admits there is no record indication of use during pregnancy, and states that plaintiff's functioning improved after the birth. However, it does not <u>explicitly find</u> that plaintiff quit using during her pregnancy or that plaintiff has not used methamphetamine thereafter.

The court agrees with plaintiff's view that the decision as a whole <u>implies</u> that plaintiff used methamphetamine nearly continuously, stopping--perhaps--only during the period in 2006 when she was pregnant. The ALJ never made a finding that plaintiff has stopped methamphetamine use. He acknowledged plaintiff's testimony, and that there is no record evidence indicating use during plaintiff's pregnancy, but he did not make a finding that she stopped. He characterized plaintiff's use as a struggle, erroneously found that she <u>claimed</u> to have stopped four years earlier, and cited instances where plaintiff admitted to frequent and continuing use. This does not suggest that the ALJ accepted that plaintiff had ceased use during her pregnancy, much less that he believed she continued to abstain after the pregnancy.

The test for whether drug abuse is a contributing factor material to the finding of disability is whether, <u>if plaintiff quit using methamphetamine</u>, she would still be disabled. Despite this standard, the ALJ never specifically confronted the issue of when or if plaintiff quit, never made a finding whether plaintiff had quit for any length of time, and never discussed her functioning during the alleged period of abstinence. Further, the ALJ's findings numbered 11, 12, 13, 14, and 16 each begin with the phrase, "<u>If the claimant stopped the substance use</u>" and relate certain findings which the ALJ determined would result at steps two through five of the sequential evaluation process **if** plaintiff stopped use, thus providing specific indication that the ALJ does <u>not</u> find that plaintiff has stopped the substance use. (R. 17-20). The court finds the decision as a whole implies that plaintiff used methamphetamine nearly continuously, perhaps stopping only during the period in 2006 when she was pregnant, and did not find plaintiff ever ultimately stopped using methamphetamine.

However, this finding does not establish that the ALJ factually erred. Rather, it demonstrates that either the ALJ did not properly confront the issues and make factual findings necessary to his decision, or he did not properly explain his findings so that they might be evaluated by a reviewing court. Plaintiff alleged that she stopped methamphetamine use in April,

2006, and that her remaining symptoms are the result of her remaining mental impairments. The ALJ found plaintiff's allegations regarding the intensity, persistence and limiting effects of her symptoms "not credible to the extent they are inconsistent with the residual functional capacity assessment." (R. 18). Moreover, he did not "find the claimant's statements sufficiently credible to justify any further limitations than those established by the objective medical record." (R. 19). However, although the decision implies that the ALJ did not accept these specific allegations (that plaintiff stopped methamphetamine use in April, 2006, and that her remaining symptoms are the result of her remaining mental impairments), the ALJ made no finding regarding them. It is not the court's duty to weigh the evidence and decide in the first instance if, or when, the record establishes that plaintiff stopped using methamphetamine. That is the ALJ's duty. He must make the findings and support them with substantial evidence in the record. This leads the court into a discussion of plaintiff's final basis for claiming error--that the ALJ failed to adequately explain or discuss his findings.

### B.   Explanation and Discussion of the ALJ's Findings

Plaintiff argues that the ALJ did not discuss plaintiff's mental impairments (other than methamphetamine use) or the symptoms they cause (Pl. Br. 16, 20); that the ALJ's RFC

-17-

assessment did not include a function-by-function assessment of
plaintiff's abilities, an explanation of how any material
inconsistencies or ambiguities in the evidence were considered
and resolved, or a discussion describing how the evidence
supports each RFC conclusion, citing specific medical and
nonmedical evidence and relating the evidence to the RFC; id. at
18-19; that the ALJ did not give specific, legitimate reasons to
reject Dr. Rimando's opinions; id. at 25; and that he did not
closely and affirmatively link his credibility findings to
substantial evidence in the record. Id. at 28-29.

The Commissioner argues that "there is no indication in his
decision that the ALJ ignored any of Plaintiff's symptoms from
her mental impairments [just] because he did not specifically
mention ADHD," (Comm'r Br. 5); that the ALJ rejected Dr.
Rimando's opinion because it was not supported by the mental
health records, in that plaintiff had no mental health treatment
for the year before the opinion was stated, and even the
preceding year's records do not reflect the severe limitations
opined by Dr. Rimando; id. at 6-7; that it was proper for the ALJ
to rely on plaintiff's daily activities and mental health
treatment in finding plaintiff is not credible; id. at 10-11; and
that it is solely the ALJ's responsibility to assess RFC, and he
properly considered that plaintiff's drug use alone would
preclude substantial gainful employment. Id. 11-12.

The Commissioner's response brief misses the point of each of plaintiff's arguments. Plaintiff acknowledged that a failure to designate a particular impairment "severe" at step two is not error where the ALJ has found at least one "severe" impairment, because the ALJ is required to consider the effects of all of plaintiff's medically determinable impairments at the subsequent steps of the process. (Pl. Br. 16)(citing <u>Hill v. Astrue</u>, No. 07-4226, 289 Fed. Appx. 289, 292, 2008 WL 3339174, *2 (10th Cir. Aug. 12, 2008)).

In <u>Brescia v. Astrue</u>, No. 07-4234, 287 Fed. Appx. 626, 628-629, 2008 WL 2662593, *1-2 (10th Cir. July 8, 2008), the Tenth Circuit held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. In <u>Hill</u>, the court explained that the failure to find additional impairments are severe is not cause for reversal so long as the ALJ considers the effects "of <u>all</u> of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" <u>Hill</u>, 289 Fed. Appx. at 291-292, 2008 WL 3339174, *2.

Plaintiff's argument is that the ALJ did not even mention ADHD in the decision, that the decision gives no indication that the ALJ considered the effects of all of plaintiff's medically determinable mental impairments, and that the decision contains no discussion of plaintiff's mental impairments or the symptoms resulting from them. (Pl. Br. 16). The Commissioner's argument that "there is no indication in his decision that the ALJ ignored any of Plaintiff's symptoms from her mental impairments [just] because he did not specifically mention ADHD" (Comm'r Br. 5) borders on frivolous. The Commissioner cites to no discussion or mention in the decision of any record evidence regarding plaintiff's mental impairments or of the resulting symptoms(other than methamphetamine abuse).

The ALJ's entire step two discussion was but a single sentence: "The claimant has the following severe impairments: methamphetamine addiction and bipolar disorder." (R. 16). As noted earlier, the ALJ discussed evidence relating to plaintiff's drug abuse. (R. 16, 18-19). Regarding plaintiff's bipolar disorder, the ALJ stated, "The claimant also has a history of treatment for bipolar disorder, and, although this problem can be expected to improve with long-term sobriety, it may not remit entirely." (R. 17). The ALJ stated that he had considered Listings 12.04 and 12.06 and found that if plaintiff stopped drug use, she would only have mild to moderate mental limitations.

(R. 18).  The ALJ rejected Dr. Rimando's opinion.  (R. 19).  The

ALJ's discussion regarding application of the Commissioner's

Psychiatric Review Technique is reproduced here in full:

> Thus, I find that, absent the affects of the claimant's
> drug use, the claimant has mild to moderate
> restrictions of activities of daily living; mild to
> moderate difficulties in maintaining social
> functioning; mild to moderate difficulties in
> maintaining concentration, persistence, or pace; and
> insufficient evidence of repeated episodes of extended-
> duration decompensation.  These result in mild to
> moderate limitations in capacities to understand and
> remember tasks, sustain concentration and persistence,
> socially interact with the general public, and adapt to
> workplace changes.

(R. 19).  As Plaintiff argues, the decision contains no mention

of ADHD.  Moreover, there is no explicit discussion of any

evidence regarding plaintiff's mental impairments other than

methamphetamine addiction.

The ALJ stated that he considered all of the evidence

regarding mental impairments, and then he stated his conclusions

regarding that evidence.  It is impossible for the court to

determine the bases for the ALJ's conclusions and, consequently,

whether substantial evidence in the record supports those

conclusions.  With regard to plaintiff's allegations regarding

consideration of all of plaintiff's mental impairments, it is

impossible from the decision to know whether the ALJ even

determined that ADHD is a medically determinable impairment under

the circumstances; it is also impossible from the decision to

know whether the ALJ considered the effects of all of plaintiff's

-21-

medically determinable mental impairments.  Although the ALJ
stated he had considered the effects of all of plaintiff's mental
impairments, he did not discuss any of the specific evidence
regarding the effects of any of plaintiff's mental impairments
except methamphetamine abuse.  Therefore, remand is necessary for
the Commissioner to properly consider all of plaintiff's mental
impairments.

    The ALJ's application of the psychiatric review technique is
equally flawed.  He purports to apply the technique, but fails to
discuss or cite to any of the evidence upon which his findings
rely.  As the Commissioner explained in Social Security Ruling
(SSR) 96-8p, "The mental RFC assessment used at steps 4 and 5 of
the sequential evaluation process requires a more detailed
assessment by itemizing various functions contained in the broad
categories found in" the four functional areas use in the
psychiatric review technique.  West's Soc. Sec. Reporting Serv.,
Rulings 147 (Supp. 2009).  An RFC must be expressed in terms of
specific work-related functions.  Id. at 148.  "Work-related
mental activities generally required by competitive, remunerative
work include the abilities to:  understand, carry out, and
remember instructions; use judgment in making work-related
decisions; respond appropriately to supervision, co-workers and
work situations; and deal with changes in a routine work
setting."  Id. at 149.  Therefore, an ALJ should not state a

mental RFC in terms of the four functional areas, but should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand. Here, the ALJ did not merely rely upon the four functional areas of the psychiatric review technique--he also restated plaintiff's mental RFC in terms of work-related mental activities. However, he did not explain the function-by-function assessment whereby he arrived at the limitations assessed. He did not explain how his findings in the four functional areas support or require the mental RFC assessed.

SSR 96-8p also includes narrative discussion requirements for the RFC assessment. Id. at 149. The discussion is to cite specific medical facts to describe how the evidence supports each RFC conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. Id. The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Id. Here, the ALJ made conclusions regarding the RFC assessment, but as plaintiff argues, he did not cite specific medical facts to describe how the evidence supports each RFC conclusion.

The court will not further belabor the inadequacy of the ALJ's decision to explain the conclusions contained therein or to

explain the bases for the Commissioner's decision. Suffice it to say that the deficiencies identified in explaining the bases for the step two determination and for the RFC assessment are representative of the deficiencies of explication throughout the decision. The decision is conclusory throughout. Much of the ALJ's discussion of the findings are merely a "conclusion in the guise of findings." Hackett, 395 F.3d at 1173(quoting Huston v. Bowen, 838 at 1133(noting that credibility findings should be closely and affirmatively linked to substantial evidence)).

An administrative agency must give reasons for its decisions. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). (citing Reyes v. Bowen, 845 F.2d 242, 244 (10th Cir. 1988)). The court is unable to ascertain from the decision at issue the reasons underlying it. Remand is necessary to correct this inadequacy. The court does not intend by this opinion to suggest the result on remand. Rather, the Commissioner must ensure that the law, the regulations, and the rulings are properly applied and the reasons for the decision are properly explained.

### C.    Request to Direct Assignment of a Different ALJ

In her conclusion, plaintiff asks the court to direct the Commissioner to assign the case to a different ALJ on remand because plaintiff may not be able to get a fair and impartial hearing before the original ALJ. While plaintiff presents case law authority to suggest that the court has inherent power to

recommend or order reassignment on remand, the court's jurisdiction arises under 42 U.S.C. § 405(g), and the statute does not confer such authority.  Although the ALJ below committed two overarching factual errors, and his decision was woefully lacking in discussion and explanation, the decision does not reveal that the errors were based on personal animus or contempt for one who is in plaintiff's circumstances.  Therefore, the court will not recommend that the case be reassigned on remand.

**IT IS THEREFORE RECOMMENDED** that the decision below be REVERSED and judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within fourteen days after being served with a copy.  Failure to timely file objections with the court will be deemed a waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 19th day of February 2010, at Wichita, Kansas.


s:/   Gerald B. Cohn
**GERALD B. COHN**
**United States Magistrate Judge**

-25-